UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QIN HUI LI<br>*on behalf of himself and others similarly situated,*<br><br>                     Plaintiff,<br><br>          -against-<br><br>WOK 88 INC. d/b/a Wok 88, WOK ON 88TH RESTAURANT INC. d/b/a Wok 88, WOK WOK CORP. d/b/a Wok 88, AI CHIU CHIANG, and STEVE WU<br><br>                     Defendants. | Index No. 17-CV-8715-GHW |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WOK 88 INC. AND AI CHIU CHIANG'S MOTION TO DISMISS THE COMPLAINT AND COMPEL INDIVIDUAL ARBITRATION

---

*By*:    William H. Ng
        Paul R. Piccigallo
        LITTLER MENDELSON, P.C.
        290 Broadhollow Road, Suite 305
        Melville, New York 11747
        (631) 247-4700

        *Attorneys for Defendants*
        *Wok 88 Inc. d/b/a Wok 88 and*
        *Ai Chiu Chiang*

## TABLE OF CONTENTS

**PAGE**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     STATEMENT OF FACTS ...................................................................................... 2

        A.      Plaintiff Agreed to Arbitrate Claims Arising Out Of, or Relating, to His
                Employment with Wok 88 ........................................................................ 2

        B.      Plaintiff's Collective and Class Action Complaint ................................. 3

III.    ARGUMENT ...................................................................................................... 3

        A.      The Federal Arbitration Act Applies to the Arbitration Agreements ................... 3

        B.      Plaintiff Must Honor His Agreement to Resolve His Claims Through
                Individual Arbitration .......................................................................... 5

        C.      The Arbitration Agreements Contain Valid Arbitration Provisions ..................... 6

        D.      Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration
                Agreements ...................................................................................... 6

        E.      Plaintiff's Class and Collective Action Claims Cannot Proceed............................ 8

        F.      The Arbitration Agreements Are Enforceable as to Defendant Chiang .............. 10

IV.     THIS COURT SHOULD GRANT DEFENDANTS REASONABLE
        ATTORNEYS' FEES AND COSTS INCURRED AS A RESULT OF
        PLAINTIFF'S CONTINUED BAD FAITH REFUSAL TO ARBITRATE .................. 10

V.      CONCLUSION.................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
    483 F. App'x 634 (2d Cir. 2012) .........................................................................................11

*American Express Co. v. Italian Colors Restaurant*,
    133 S. Ct. 2304 (2013)..............................................................................................................9

*AT&T Mobility, LLC v. Concepcion*,
    563 U.S. 333 (2011)...................................................................................................3, 4, 8, 9

*Baravati v. Josephthal, Lyon & Ross*,
    28 F.3d 704 (7th Cir. 1994) .....................................................................................................8

*Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*,
    80 N.Y.2d 1031 (1992) ............................................................................................................5

*Brener v. Becker Paribas, Inc.*,
    628 F. Supp. 442 (S.D.N.Y. 1985) ........................................................................................10

*Brown v. St. Paul Travelers Cos.*,
    559 F. Supp.2d 288 (W.D.N.Y. 2008)....................................................................................6

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)................................................................................................................4

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003)..................................................................................................................4

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
    58 F.3d 16 (2d Cir. 1995)........................................................................................................6

*D.C. Perry v. ICN Pharm.*,
    866 F. Supp. 120 (S.D.N.Y. 1994) ........................................................................................10

*Direct TV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015)..........................................................................................................4, 9

*Equal Emp't Opportunity Comm'n v. Waffle House*,
    534 U.S. 279 (2002)................................................................................................................7

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
    815 F.2d 840 (2d Cir. 1987)....................................................................................................5

*Hall St. Assoc., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008)............................................................................................4

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)............................................................................................6

*League of Am. Theatres & Producers, Inc., v. Cohen*,
    270 A.D.2d 43 (1st Dep't 2000) ......................................................................5

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)............................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*,
    460 U.S. 1 (1983)..............................................................................................7

*Newspaper Guild of New York v. New York Times Co.*,
    No. 81-CV-4972, 1981 U.S. Dist. LEXIS 15366 (S.D.N.Y. Oct. 29, 1981) ...........12

*PacifiCare Health Sys. v. Book*,
    538 U.S. 401 (2003)..........................................................................................6

*Patterson v. Raymours Furniture Co.*,
    Case No. 15-2820-cv, 2016 U.S. App. LEXIS 16240 (2d Cir. Sep. 2, 2016) ...........9

*Perry v. Thomas*,
    482 U.S. 483 (1987)..........................................................................................4

*Rent-A-Center West v. Jackson*,
    561 U.S. 63 (2010)............................................................................................8

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993)..........................................................................10

*Sands Bros. & Co. v. Nasser*,
    No. 03-CV-8128, 2003 U.S. Dist. LEXIS 23406 (S.D.N.Y. Jan. 5, 2004) ...........12

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974)..........................................................................................5

*Sisters of St. John the Baptist, Providence Rest Convent v. Geraghty Constructor,*
    *Inc.*,
    67 N.Y.2d 997 (1986) .......................................................................................5

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..........................................................................................8

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013).............................................................................9

*Union Fire. Ins. Co. v. Belco Petroleum Corp.*,
      88 F.3d 129 (2d Cir. 1996)..................................................................................6

**Statutes**

28 U.S.C. § 1927.....................................................................................................11

Fair Labor Standards Act ...................................................................................1, 2, 3, 9

Federal Arbitration Act .......................................................................................... *passim*

New York Labor Law ..........................................................................................1, 3, 9

**Other Authorities**

Federal Rules of Civil Procedure Rule 11 ........................................................11, 12, 13

Defendants Wok 88 Inc. d/b/a Wok 88 ("Wok 88") and Ai Chiu Chiang ("Chiang") (collectively, "Defendants") file this Memorandum of Law in Support of their Motion to Dismiss the Complaint and Compel Individual Arbitration.[1]

## I.    PRELIMINARY STATEMENT

On November 9, 2017, Plaintiff Qin Hui Li ("Plaintiff") filed a Class Action and Collective Action Complaint (hereinafter, the "Complaint") in this action, asserting a host of wage and hour claims pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), on behalf of himself and others similarly situated.  Plaintiff brings suit against Wok 88 and Chiang along with several other individuals and entities not represented by the undersigned counsel.[2]

Plaintiff contends that, despite his signed agreements to arbitrate on an individual basis any claims relating to or arising out of his employment with Defendants, he is permitted to pursue the instant litigation against the appearing Defendants.  Defendants now move to dismiss Plaintiff's Complaint and compel individual arbitration in accordance with the arbitration agreements he executed and well-settled law in the Second Circuit.  Defendants also seek an award of all attorneys' fees and costs incurred in the preparation and filing of the instant motion, in light of Plaintiff's Counsel's continued bad faith refusal to arbitrate Plaintiff's claims in this action and Plaintiff's Counsel's admissions on the record that binding Second Circuit case law requires that Plaintiff arbitrate his individual claims.

---

[1] Unless otherwise stated, all documents and corresponding exhibits referred herein are attached to the Declaration of William H. Ng in Support of Defendants Wok 88 Inc. and Ai Chiu Chiang's Motion to Dismiss the Complaint and Compel Individual Arbitration, dated March 29, 2018 ("Ng Decl.").

[2] The undersigned counsel does not represent Defendants Wok on 88th Restaurant Inc. d/b/a Wok 88, Wok Wok Corp. d/b/a Wok 88 or individual defendant Steve Wu.

For all the reasons set for the below, the Court should grant (1) Defendants' motion to dismiss the complaint and order Plaintiff to submit his dispute to individual arbitration; and (2) award to Defendants reasonable attorneys' fees incurred as a result of Plaintiff's counsel's bad faith refusal to arbitrate his claim in this action.

## II.    STATEMENT OF FACTS

### A.    Plaintiff Agreed to Arbitrate Claims Arising Out Of, or Relating, to His Employment with Wok 88

Wok 88 is a small Chinese food restaurant in Manhattan, New York. *See* Declaration of William Ng in Support of Defendants Wok 88 Inc. and Au Chu Chiang's Motion to Dismiss and Compel Individual Arbitration ("Ng Decl."), ¶ 2.   Plaintiff allegedly worked at Wok 88 as a deliveryman from on or about August 1, 2016 to November 3, 2017. *See* Compl. at ¶ 54. Plaintiff, during his employment with Wok 88, entered into substantively identical arbitration agreements in English and Chinese (the "Arbitration Agreements") applying to "any disputes with any individual or entity, including Wok 88, related to [Plaintiff's] employment with Wok 88." *See* Ex. A to Ng Decl., at p. 1.  The Arbitration Agreements expressly cover disputes involving "minimum wage and overtime; other wage payments; breaks and meal periods; wage notices; termination; and other conditions of employment." *Id.*  Specifically, the Arbitration Agreements state, in relevant part, that they cover claims arising under "the Fair Labor Standards Act ... and state or local laws addressing the same or similar subject matters," and "claims that arose before you sign into the Agreement as well as those that arise after you sign the agreement." *Id.*

The Arbitration Agreements require Plaintiff to pursue claims in arbitration individually, and not on a class or collective action basis.  Specifically, the Arbitration Agreements provide that:

> This Agreement affects your ability to participate in a class, collective or representative actions. Both Wok 88 and [Plaintiff] agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective or representative action, or as a member in any such class collective or representative proceeding ("Class Action Waiver").

*See* Ex. A to Ng Decl., at p. 3.

### B.     Plaintiff's Collective and Class Action Complaint

In the Complaint, Plaintiff asserts various claims relating to or arising out of his employment with Wok 88. The crux of Plaintiff's claims arise out of the manner of Wok 88's payment of wages to him, and in summary are claims for alleged unpaid minimum wage and overtime under the FLSA and NYLL. Plaintiff's Complaint is styled as a putative class and collective action, and Plaintiff seeks to represent those allegedly "similarly situated" to him as well as a class of "all non-exempt personnel" employed by Wok 88 for a period six years prior to Plaintiff's filing of the Complaint. *See* Compl. at ¶¶ 1, 72.

## III.    ARGUMENT

### A.     The Federal Arbitration Act Applies to the Arbitration Agreements

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, mandates that courts compel arbitration of claims that parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 338–39 (2011) (explaining that the FAA declares a liberal policy favoring the enforcement of arbitration agreements). Specifically, Section 2 of the FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

By enacting the FAA, Congress sought to overcome what was then widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that FAA was enacted "[t]o overcome judicial resistance to arbitration"). Indeed, the FAA not only placed arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy ***favoring*** arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24 (1983) (emphasis added)); *Direct TV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act").

The Arbitration Agreements here clearly are governed by the FAA.  As an initial matter, the language of the Arbitration Agreements confirms the FAA's applicability. *See* Ex. A to Ng Decl., at p. 1 ("This agreement is governed by a law known as the Federal Arbitration Act"); *see also Buckeye Check Cashing*, 546 U.S. at 442–43 (where arbitration agreement expressly provided that FAA was to govern, the FAA preempted application of state law).  In addition, the Arbitration Agreements are contracts "evidencing a transaction involving commerce."  The term "involving commerce" is interpreted as broadly as constitutionally permissible, and does not require "showing any specific effect upon interstate commerce." *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce).  Plaintiff entered into the Arbitration Agreements for the purposes of employment services to Wok 88, and

Plaintiff's performance of these services in exchange for compensation involve commerce sufficient for the FAA to apply.[3]

### B.   Plaintiff Must Honor His Agreement to Resolve His Claims Through Individual Arbitration

Section 4 of the FAA "directs a federal court to order parties to proceed to arbitration if they has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal citations omitted).  In relevant part, Section 4 of the FAA states that a:

> [P]arty aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, *the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.*

9 U.S.C. § 4 (emphasis added); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (stating that "[t]hese provisions are mandatory: 'by its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the

---

[3]   Even if the FAA did not apply, Plaintiff's claims would still be subject to mandatory individual arbitration under New York law, which likewise favors arbitration.  *See Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*, 80 N.Y.2d 1031, 1032 (1992) ("This Court has repeatedly held that arbitration is a favored method of dispute resolution in New York, and 'New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration.'" (internal citations omitted)); *League of Am. Theatres & Producers, Inc., v. Cohen*, 270 A.D.2d 43 (1st Dep't 2000) (affirming grant of motion to compel because "arbitration should not be stayed unless the arbitration clause cannot be reasonably interpreted to cover the disputed matter").  Under New York law, courts tasked with determining whether to order arbitration address the following questions: (1) "whether parties have agreed to submit their disputes to arbitration," and (2) "if so, whether the disputes generally come within the scope of their arbitration agreement." *Sisters of St. John the Baptist, Providence Rest Convent v. Geraghty Constructor, Inc.*, 67 N.Y.2d 997, 998 (1986). "The court's inquiry ends . . . where the requisite relationship is established between the subject matter of the dispute and the subject matter of the underlying agreement to arbitrate." *Id.* at 998.  At that point, the action is exclusively within the province of the arbitrator. *See also* NY CPLR §§ 7501; 7503(a)

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed'").

In determining whether to compel arbitration under the FAA, two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate; and (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.  *See PacifiCare Health Sys. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002); *Union Fire. Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996).  Both gateway issues are satisfied here.

### C.    The Arbitration Agreements Contain Valid Arbitration Provisions

Plaintiff's claims must be referred to individual arbitration because Plaintiff clearly and unequivocally agreed to arbitrate, and to do so only on an individual basis.  As stated above, the Arbitration Agreements provide, among other things, that "any legal dispute covered by this agreement … will be resolved by something known as binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") and not by court or jury."  *See* Ex. A to Ng Decl., at p. 1.  Because the Arbitration Agreements are binding agreements under principles of contract formation, Plaintiff is bound by their terms.  *See e.g., Brown v. St. Paul Travelers Cos.*, 559 F. Supp.2d 288, 291 (W.D.N.Y. 2008) (courts employ ordinary principles of contract and agency to determine whether there was an agreement to arbitrate).

### D.    Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration Agreements

Prevailing federal precedent directs courts to "construe arbitration clauses as broadly as possible."  *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal quotations and citations omitted).   "[A]s a matter of federal law, any doubts concerning the

scope of the arbitrable issues should be resolved in favor of the arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone,* 460 U.S. at 24–25.

In determining whether Plaintiff's claims are covered by the Arbitration Agreements, the threshold inquiry is an analysis of the contractual language. "Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *Equal Emp't Opportunity Comm'n v. Waffle House,* 534 U.S. 279, 280 (2002).

In this case, the broad Arbitration Agreements clearly encompass all of Plaintiff's claims. The Arbitration Agreements state that it broadly applies to "disputes with any individual or entity, including Work 88, related to [Plaintiff's] employment with Wok 88." The Arbitration Agreements further provide:

> For example, this agreement covers disputes involving: application for employment; background checks; privacy; minimum wage and overtime; other wage payments; breaks and meal periods; wage notices; termination; and other conditions of employment.

Ex. A to Ng Decl., at p. 1.

Plaintiff's claims, which allege Wok 88 failed to properly compensate Plaintiff for minimum and overtime wages (*see* Compl. at ¶¶ 167–217), squarely fall within the scope of the Arbitration Agreements. **Indeed, Plaintiff's counsel at the Pre-Motion Conference for the instant motion *acknowledged* that the Arbitration Agreements cover the claims asserted by Plaintiff in his Complaint.** *See* Ex. D to Ng Decl., at pp. 4-5, 10-11. As such, the Arbitration Agreements must be enforced. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57–58 (1995).

### E.    Plaintiff's Class and Collective Action Claims Cannot Proceed

The Court should also order the parties to arbitrate Plaintiff's claims solely on an individual basis.  "The FAA reflects the fundamental principle that arbitration is a matter of contract."  *Rent-A-Center West v. Jackson*, 561 U.S. 63, 68 (2010).  Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement."  9 U.S.C. § 4.

The Supreme Court has made abundantly clear that parties to an arbitration agreement are free to set the terms of their agreement.  *See Volt*, 489 U.S. at 479 (parties may "specify by contract the rules under which that arbitration will be conducted").  Taking its lead from the Supreme Court, the Seventh Circuit Court of Appeals has described that leeway in the following rather raw terms:  "Indeed, short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes."  *Baravati v. Josephthal, Lyon & Ross*, 28 F.3d 704, 709 (7th Cir. 1994).

The kinds of terms that parties are free to agree upon, or not, include a provision precluding class and collective adjudication.  As the Supreme Court confirmed in *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, it is improper to force a party into a class proceeding to which is did not agree, because arbitration "is a matter of consent."  559 U.S. 662, 664 (2010).  Parties "may specify with whom they choose to arbitrate their disputes."  *Id.* at 683 (emphasis in original).  As such, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  *Id.* at 684.

In *Concepcion,* the Supreme Court upheld the enforceability of class waivers in FAA-governed arbitration agreements, reaffirming the bedrock principle that arbitration agreements must be enforced as written.  The Court held that the California Supreme Court's rule restricting

enforcement of class action waivers was preempted by the FAA, because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA. *See* 563 U.S. at 351.[4] Similarly, in *American Express Co. v. Italian Colors Restaurant*, an appeal from a decision of the Second Circuit, the Supreme Court reiterated that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes." 133 S. Ct. 2304, 2309 (2013). The Supreme Court reversed the Second Circuit and enforced a class action waiver in an arbitration agreement, ruling that such a waiver in a FAA-governed arbitration agreement is enforceable, even if the plaintiff's costs of individually arbitrating a claim exceed the potential individual recovery. *Id.* at 11–12.

Accordingly, courts faced with arbitration agreements containing express class action waivers consistently uphold their enforceability and compel arbitration on an individual basis. *See, e.g., Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (upholding class action waiver and reversing district court's decision to deny motion to compel arbitration of plaintiffs' FLSA and NYLL overtime claims); *Patterson v. Raymours Furniture Co.*, Case No. 15-2820-cv, 2016 U.S. App. LEXIS 16240 (2d Cir. Sep. 2, 2016) (Summary Order).

The parties here did not agree to class or collective arbitration. To the contrary, as discussed above, the Arbitration Agreements expressly prohibit arbitration on a class or

---

[4]       The Supreme Court also explained that class arbitration was inconsistent with the fundamental attributes of arbitration as contemplated by the FAA. *Concepcion*, 563 U.S. at 347–48. In particular, the Court stated that class arbitration sacrificed the principal advantage of arbitration—its informality—and rendered the process slower and more costly. *Id.* at 348–49. The Court further noted it was unlikely Congress intended to have an arbitrator address the more formal procedural requirements of a class proceeding. *Id.* Finally, the Court opined that arbitration was poorly suited to the higher stakes of class litigation and significantly increased the risks to defendants, especially given the absence of multilayered judicial review. *Id.* at 350. Accordingly, because the Supreme Court concluded that California's *Discover Bank* rule effectively forced parties into class arbitration as a condition of enforcement of their arbitration agreement, and because class arbitration interfered with the fundamental attributes of arbitration, including the paramount principle that arbitration agreements are to be enforced as written, the Court held that the *Discover Bank* rule was inconsistent with the FAA and thus preempted. *Id.* at 352. *Concepcion* was later reaffirmed by the Supreme Court in *Imburgia*. 136 S. Ct. at 468 ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act").

collective basis. *See* Ex. A to Ng Decl., at p. 3. Therefore, the Arbitration Agreements should be enforced as written, and Plaintiff's individual claims should be sent to arbitration.

> ### F. The Arbitration Agreements Are Enforceable as to Defendant Chiang

The protections afforded to entities that are party to arbitration agreements also typically extend to the entities' employees. *See, e.g., Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir. 1993), *cert. denied,* 510 U.S. 945 (1993) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement" for if claims against individual employees were not also subject to arbitration, "it would be too easy to circumvent [arbitration] agreements by naming individuals as defendants instead of the entit[ies] themselves").

Just as Plaintiff's claims against Wok 88 should be dismissed and ordered to individual arbitration, they should also be dismissed to Defendant Chiang, an owner of Wok 88 (*see* Ng Decl. at ¶ 2), who is likewise protected by the Arbitration Agreements. *See, e.g., D.C. Perry v. ICN Pharm.,* 866 F. Supp. 120, 121 (S.D.N.Y. 1994); *Brener v. Becker Paribas, Inc.,* 628 F. Supp. 442, 451 (S.D.N.Y. 1985).

### IV. THIS COURT SHOULD GRANT DEFENDANTS REASONABLE ATTORNEYS' FEES AND COSTS INCURRED AS A RESULT OF PLAINTIFF'S CONTINUED BAD FAITH REFUSAL TO ARBITRATE

Defendants hereby request an award of all attorneys' fees and costs incurred in the preparation and filing of the instant motion, in light of Plaintiff's Counsel's continued bad faith refusal to arbitrate Plaintiff's claims in this action *and* Plaintiff's Counsel's admissions on the record that binding Second Circuit case law requires that Plaintiff arbitrate his individual claims in this action. *See* Exs. A and D to Ng Decl. As described below and in the Ng Decl., despite repeated attempts by Defendants' counsel to contact Plaintiff's counsel—by phone, e-mail and letter—to amicably resolve this matter without the need for Court intervention, Plaintiff's counsel

has refused to engage with Defendants' counsel. However, more egregious than Plaintiff's Counsel's repeated refusal to respond to Defendants' Counsel is the fact that Plaintiff's Counsel admitted on the record before the Court that the binding law in the Second Circuit would not permit this lawsuit to proceed and requires Plaintiff to arbitrate the claims in this action. *See* Ex. D to Ng Decl., at pp. 4-5. This Court further advised Plaintiff's Counsel of his/their obligations under Rule 11 of the Federal Rules of Civil Procedure. *Id.* at pp. 10-11.

Given the foregoing, Defendants are entitled to an award of their reasonable attorneys' fees and costs incurred in bringing this motion pursuant to 28 U.S.C. § 1927.[5] Section 1927 provides:

> An attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.*

The Second Circuit has applied Section 1927 to affirm the awarding of attorneys' fees to the moving party where the party opposing arbitration in the face of a valid arbitration agreement needlessly, and without legal basis, forced the moving party to engage in motion practice to enforce the arbitration agreement. *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634, 636 (2d Cir. 2012) ("The federal policy of enforcing sophisticated parties' arbitration agreements weighs in favor of fee awards against parties who attempt, without legitimate legal basis, to circumvent arbitration"). Courts in this Circuit have held that tactics that "miscategorize or ignore the law" in an effort to avoid arbitration warrant the imposition of attorneys' fees to the

---

[5]     Although Defendants in its prior correspondence to Plaintiff's counsel reserved the right to pursue remedies under Rule 11 of the Federal Rules of Civil Procedure, and, indeed, the Court at the February 28, 2018 pre-motion conference advised Plaintiff's counsel of Defendants' remedies regarding the same (*see* Ng Decl. at ¶ 9), Defendants, in an attempt to expeditiously resolve this matter, have not pursued such sanctions here.

moving party. *See, e.g., Sands Bros. & Co. v. Nasser*, No. 03-CV-8128, 2003 U.S. Dist. LEXIS 23406, at *8 (S.D.N.Y. Jan. 5, 2004) (awarding attorneys' fees to defendant where plaintiffs failed to make a colorable argument explaining why plaintiffs' claims were not subject to arbitration); *Newspaper Guild of New York v. New York Times Co.*, No. 81-CV-4972, 1981 U.S. Dist. LEXIS 15366, at *4-*5 (S.D.N.Y. Oct. 29, 1981) (compelling arbitration and awarding attorneys' fees where "the party refusing arbitration acted without justification or did not have a reasonable chance to prevail").

As described herein and the Ng Decl., the undersigned counsel attempted on no less than four separate occasions (November 13, 2017 telephone call and e-mail to Plaintiff's Counsel; November 28, 2017 e-mail and hard copy letter sent to Plaintiff's Counsel by overnight mail; December 13, 2017 follow-up e-mail to Plaintiff's Counsel; and December 15, 2017 follow-up e-mail to Plaintiff's Counsel) to engage Plaintiff's counsel prior to filing the instant motion. *See* Ng Decl., at ¶¶ 3-8; *see also* Exs. B and C. Indeed, the undersigned counsel on November 28, 2017 sent to Plaintiff's counsel via e-mail and federal express a letter explaining Defendants' position and attaching the Arbitration Agreements. *See* Ng Decl. at ¶ 5, Ex. C. The letter directed Plaintiff to honor his agreement to arbitrate all claims relating to his employment and contact the undersigned at Plaintiff's counsel's earliest convenience. *Id.* Further, the letter advised Plaintiff that Defendant "reserved all rights, including but not limited to seeking sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure." *Id.* After Plaintiff's counsel failed to respond, the undersigned counsel again e-mailed Plaintiff's counsel on December 13, 2017 and December 15, 2017, requesting Plaintiff honor his agreements to arbitrate. *See* Ng Decl. at ¶¶ 6-7 and Ex. B.

Following the February 28, 2018 pre-motion conference, the undersigned, in one last good faith effort to avoid the instant motion practice, sent formal correspondence to Plaintiff's counsel on March 15, 2018 along with (a) a courtesy copy of the transcript from the parties' pre-motion conference; (b) the Court's Order and briefing schedule; and (c) a Stipulation of Dismissal and proposed Order of Dismissal. *See* Ng Decl. at ¶ 10 and Ex. E. However, once again, Plaintiff's counsel refused to even respond to the undersigned, necessitating the instant motion.

As a result of Plaintiff's counsels' needless obstinance and refusal to engage with Defendants' counsel in any manner, Defendants have been forced to file the instant motion, thereby unreasonably and vexatiously compounding the litigation in this case. Instead of stipulating to dismiss this case and proceed to arbitration in light of the clear and unequivocal Arbitration Agreements, and even after being warned by the Court of possible repercussions under Rule 11 of the Federal Rules of Civil Procedure (*see* Ex. D to Ng Decl., at pp. 10-11), Plaintiff and his attorneys have chosen to continue with this litigation. Plaintiff's insistence in maintaining this lawsuit, despite his signed agreements and understanding to arbitrate his claims, has unnecessarily multiplied the proceedings, thereby justifying an award of attorneys' fees.

## V.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint and order Plaintiff to submit his dispute to individual arbitration, and award to Defendants reasonable attorneys' fees incurred as a result of Plaintiff's counsel's bad faith refusal to arbitrate his claim in this action, along with such other further legal and equitable relief as this Court deems necessary, just and proper.

Respectfully submitted,

Date:   March 29, 2018
        Melville, New York

William H. Ng
Paul R. Piccigallo
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY  11747
631.247.4700

*Attorneys for Defendants*
  *Wok 88 Inc. d/b/a Wok 88 and*
  *Ai Chiu Chiang*