# EXHIBIT D

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
                ------------------------------x

                QIN HUI LI,

                              Plaintiff,

                        v.                              17 CV 8715 (GHW)

                WOK 88, INC., et al.,

                              Defendants.

                ------------------------------x
                                                        New York, N.Y.
                                                        February 28, 2018
                                                        9:30 a.m.
                Before:

                              HON. GREGORY H. WOODS,

                                                        District Judge

                                     APPEARANCES

                TROY LAW, PLLC
                    Attorneys for Plaintiff
                BY: KIBUM BYUN

                LITTLER MENDELSON, P.C.
                    Attorneys for Defendants Wok 88, Inc. and Ai Chiu Chiang
                BY: WILLIAM H. NG
```

1            (Case called)

2            THE DEPUTY CLERK:  Counsel, please state your names
3    for the record.

4            MR. BYUN:  Good morning, your Honor.  This is can I
5    Kibum Byun of Troy Law representing plaintiff.

6            THE COURT:  Thank you.

7            MR. NG:  Good morning, your Honor.  From the law firm
8    Littler Mendelson representing Wok 88, Inc. and the individual
9    Defendant Chiang.

10           THE COURT:  Thank you.  Good morning.

11           We're here for a premotion conference with respect to
12   this matter.  I've reviewed the letter submitted by the two
13   defendants represented here.  I'd like to discuss it with the
14   parties.

15           First just a comment about the order to show cause
16   that I issued earlier regarding why I shouldn't dismiss the
17   case for failure to serve process.

18           Rule 4(l) requires service of process and,
19   importantly, that those filings be filed with the Court.  So,
20   counsel for plaintiffs, you should please comply with Rule 4(l)
21   in the future.

22           I ultimately dismissed one of the defendants because
23   when you did ultimately comply with Rule 4(l) in response to my
24   order, you failed to do so with respect to all of the
25   defendants.

1           So I would just ask that you both comply with that
2    rule going forward and that you take good care about being
3    complete and thorough in your filings.  I understand today may
4    be your last day, counsel.  So please communicate this to your
5    colleagues.
6           Counsel for defendants, what's the nature of your
7    motion?  I don't see a copy of the agreement with the letter.
8    I see the excerpt from it.
9           Do you have a copy of the agreement that I can see?
10          MR. NG:  Yes, your Honor.  The reason why it was not
11   submitted was, just out of an abundance of caution, we believed
12   that your individual rules did not permit us to submit
13   attachments to our premotion conference, but we certainly have
14   an extra copy here for your Honor.
15          THE COURT:  Thank you.  Please hand it forward.
16          Have you shared a full copy of the agreement with
17   counsel for plaintiffs?
18          MR. NG:  Yes, your Honor.  That's correct.  By letter.
19   We sent it by FedEx on November 28, 2017.  I will provide a
20   copy of that letter with the attachment of the Exhibit A.  So
21   you can see the agreement.
22          THE COURT:  Thank you.
23          I've read the letter.  I understand that counsel for
24   the defendants attempted to communicate with the plaintiff's
25   counsel here before raising this motion with the Court.

1           Is there anything else that you wanted to tell me in
2  addition to what was presented in the letter, counsel for
3  defendants?
4           MR. NG:  No, your Honor.  As your Honor correctly
5  noted, even within four days of the complaint being filed, we
6  reached out no less than four times.  We tried to communicate
7  with the plaintiff's counsel in order to avoid actually the
8  parties coming down and wasting judicial resources, to avoid
9  unnecessary motion practice, and to see if they would be
10 willing to stipulate to the arbitration.  Unfortunately, they
11 did not respond or agree.
12          THE COURT:  Thank you.
13          So, counsel for plaintiff, what's your view?
14          MR. BYUN:  Yes, your Honor.  First of all, contrary to
15 defendants' representation, I think the right under FLSA, the
16 statutory right under FLSA is not waivable.  But the question
17 is whether the arbitration agreement is enforceable or not.
18          I acknowledge that under Second Circuit it is
19 enforceable.  However, there is a pending Supreme Court case,
20 three Supreme Court cases, which is about to rule on this
21 issue.
22          They had an oral argument in October.  I believe it's
23 better to stay the motion or the case until the Supreme Court
24 rules on the issue of arbitration agreement for court direction
25 of FLSA, your Honor.

1                THE COURT:  Thank you.
2                So first, counsel, you recognize that the binding law
3     in this circuit, if it applies, would not permit this lawsuit.
4                Is that right?
5                MR. BYUN:  Yes.  I understand that, your Honor.
6                THE COURT:  Thank you.
7                So your expectation is instead that the Supreme Court
8     is likely to uphold -- is it the Seventh Circuit's decision
9     regarding collective actions?
10               MR. BYUN:  I believe there's also a Second Circuit
11    case.  There are three cases.  I think it's three cases
12    together, your Honor, will be heard in the Supreme Court.  I
13    believe Ernst & Young is a Second Circuit case I believe,
14    your Honor.
15               THE COURT:  Thank you.
16               Counsel for defendant, what's your view regarding that
17    proposal, namely, that we hold these issues in abeyance pending
18    the Supreme Court's ruling on this question?
19               MR. NG:  Your Honor, I think as your Honor correctly
20    noted, the binding decision in the Second Circuit would compel
21    arbitration at this point.  I acknowledge that the cases are
22    before the Supreme Court and the decision about class action
23    waivers, collective action waivers are before the court, the
24    highest court.
25               I think, for the purposes of resolving this matter, I

think it should be sent to arbitration, whether that be motion practice or whether the plaintiffs would be stipulating to that.

THE COURT: Thank you.

I think that's basically the question. I'm not prepared to stay the proceedings here pending resolution of the Supreme Court's case. The Second Circuit has spoken on this issue. The binding law in this court at this time applies until it is changed.

I do not want to handicap the outcome of the Supreme Court's decision, but I don't see a basis to do anything other than to apply the law that governs this case at this point.

I also note that as counsel here has stated, counsel here represents only a subset of the many defendants who have been sued by plaintiffs here.

So, counsel for plaintiff, why do you propose to stay the action as a whole pending the Supreme Court's decision, given the fact that you have pending claims against other entities who have not made this application?

MR. BYUN: Yes. Other defendants in this action is in default. If the party went to arbitration, there would be question about the liability of default parties as to how much or whether they should be liable or binding to the judgment arbitration.

1      THE COURT:  I'm sorry.  What would be the basis for
2  anyone to conclude that they were bound by the arbitration
3  agreement?
4      MR. BYUN:  That's the question.  Nobody, I don't think
5  other than the appearing party, are binding by the arbitration
6  agreement.  If arbitration judgment comes, there would be a
7  question whether they should be liable or not.
8      THE COURT:  Can you tell me what the nature is of the
9  claims against the non-appearing defendants as compared to the
10 appearing defendants.
11     MR. BYUN:  Yes.  The nature of claims is the same.
12 It's essentially the wage-and-hour claim under FLSA and
13 New York Labor Law, your Honor.
14     THE COURT:  Thank you.
15     Let me ask the question differently.  The defendants
16 who are appearing here I understand currently operate and own
17 the restaurant.  Is that right?
18     MR. NG:  That's right, your Honor.
19     THE COURT:  Thank you.
20     Counsel for plaintiffs, who are the other defendants?
21 Is it your position that they operated the restaurant in a
22 prior period?  Why is it, in your view, the fact that they're
23 liable?
24     MR. BYUN:  Yes.  It's one restaurant, your Honor.
25 They operated it at a different period of time.

1              THE COURT:  Thank you.

2              So what's the issue with respect to overlapping

3    damages that you suggest if the other defendants operated the

4    restaurant in a prior period?

5              MR. BYUN:  First of all, your Honor, we're not so sure

6    before discovery when each defendant occupied and operated the

7    restaurant, your Honor.  My client worked at the restaurant

8    since 2009, your Honor.  So it's a question of when each

9    restaurant started to operate.

10             I believe Wok on 88th Street operated since 1984, but

11   other restaurant is not quite clear.  We got the timeline from

12   New York state.  However, that's not usually the precise date

13   when they start to operate the restaurant, your Honor.

14   Sometimes they operate before they incorporate the corporation.

15   Sometimes they operate after they incorporate the corporation,

16   your Honor.

17             THE COURT:  Thank you.

18             Let me just explain what I'm thinking about, and you

19   can react.

20             So, as I understand the appearing defendants' request,

21   it is that you dismiss the claims against them and that those

22   claims proceed to arbitration as you concede as mandated by the

23   arbitration agreement and governing Second Circuit law.

24             They would then be out of this case.  You would then

25   have a continuing case against defendants who have not appeared

1   here or who are currently in default.

2           Given that the non-appearing defendants owned the
3   restaurant, according to your proffered facts, prior to these
4   defendants, it's not apparent to me why the dismissal of these
5   appearing defendants would have any impact on the determination
6   by the Court or at an inquest or otherwise regarding the amount
7   of damages owing by the defaulted defendants, assuming that
8   there is some.

9           Can you articulate why it is that you think that the
10  appearing defendants' dismissal of this lawsuit would have an
11  impact on the damages that you could pursue from the
12  non-appearing defendants.

13          MR. BYUN:  Yes, your Honor.  As you know, Judge, it
14  appears the way those corporate entity owned or operated the
15  restaurant at a different set of time.  However, your Honor,
16  those corporate entities have not been dissolved.  They are
17  still active under New York state law, and we do not know
18  whether they still have any active role in operating
19  restaurant.  We do not know that yet, your Honor.

20          So there is a question whether they could be jointly
21  liable for the liability for the appearing defendant,
22  your Honor.  That's one issue that we have in this action,
23  your Honor.

24          THE COURT:  Thank you.  That's fine.

25          I'm not sure that I completely appreciate that

1  argument. But in any event, given, in particular, the fact
2  that you have continuing claims against other defendants that
3  you intend to pursue, I see no basis to hold in abeyance the
4  case as a whole while the Supreme Court rules on any issue that
5  may affect the governing law in this circuit.
6      I understand the plaintiffs concede that the agreement
7  by its terms mandates arbitration by the plaintiff with respect
8  to the appearing defendants. So we have, I think, two
9  approaches: Either, one, plaintiff can agree to stipulate to
10 the dismissal of those defendants from the action and pursue
11 the litigation with respect to the non-appearing defendants; or
12 two, we can litigate this issue by motion practice. That is a
13 decision that I think is left to the parties.
14     Do you have a view regarding the way that you would
15 prefer to proceed at this time, counsel for plaintiff?
16     MR. BYUN: At this moment, plaintiff would not like to
17 stipulate on the dismissal of claim against the appearing
18 defendants.
19     THE COURT: Thank you. That's fine.
20     I'll set a briefing schedule then, counsel. Let me
21 just remind you, Mr. Byun. You will not be signing this brief,
22 but someone from your firm will.
23     MR. BYUN: Yes, your Honor.
24     THE COURT: That person will be fully aware of their
25 obligations under Rule 11. They will be certifying that their

arguments are based on existing law or nonfrivolous extension of law. You have conceded here that the agreement mandates arbitration and that the Second Circuit's governing law mandates arbitration in these circumstances.

I assume that you will inform whoever it is at your law firm that will be signing the briefs in opposition to this motion of your view regarding the law and the concessions made on the record here.

To the extent the motion raises issues that I think may be frivolous arguments with respect to the law in this circuit, I expect that the lawyer will be aware of their obligations under Rule 11.

So I'm happy to set a briefing schedule for this motion with this understood. Counsel, the schedule for this motion is something that we're going to discuss now.

Counsel for defendant, when would you propose to file your motion? I understand, to be clear, that your motion is not a motion to stay this litigation. Rather, it's a motion to compel arbitration and to dismiss the claims against these two individual defendants or this set of individual defendants. Is that right?

MR. NG: That's correct, your Honor.

THE COURT: Thank you.

When would you propose to file your motion?

MR. NG: Your Honor, would you be amenable with three

1  or four weeks?
2              THE COURT:  Thank you.  Yes.
3              What date would you propose?
4              MR. NG:  Can I do by March 28?  I think this extra
5  time would also allow whichever new attorney that may be
6  handling this for the plaintiffs to possibly consider the
7  record that we've discussed today.
8              THE COURT:  Thank you.
9              I'll set the deadline for submission of the motion for
10 April 6 which is just after the date that you propose.  Of
11 course, counsel, to the extent that you choose to file the
12 motion sooner than that, you may do so.
13             Counsel for plaintiffs, how much time do you need in
14 order to oppose the proposed motion?
15             MR. BYUN:  Yes, your Honor.  I believe we would need
16 about three to four weeks to oppose the motion, your Honor.
17             THE COURT:  Thank you.
18             Why?
19             MR. BYUN:  I believe there would be a new attorney who
20 will be doing all the researches.  I will give all the notices
21 from the Court today and everything, but I believe there will
22 be some time needed for him or her in the drafting of the
23 opposition, your Honor.
24             THE COURT:  Thank you.
25             Given that this is a relatively discreet issue, that

1  the issue is clearly presented in the letter by defendants,
2  given that, as we've discussed, the law with respect to this
3  issue is straightforward and the contract at issue is only
4  three pages long, I don't believe that a three-week period of
5  time to oppose is appropriate here.
6       The opposition will be due no later than two weeks
7  following service of the motion.  Any reply will be due no
8  later than one week following that.  That way the motion will
9  be fully briefed by the end of April and we'll be able to
10 decide the case.
11      To the extent that in the interim the Supreme Court
12 has decided that waiver of a collective action is not viable in
13 a way that impacts this lawsuit, we will be able to take that
14 into account.
15      In any event, I'm not sure why it would -- I'm sorry.
16 Counsel.
17      MR. NG:  If I may be heard.
18      THE COURT:  That's fine.
19      MR. NG:  You mentioned that we have up until April 6,
20 2018.  In the event that we are able to get that motion in
21 sooner -- we do want to provide him some time to consider what
22 has been discussed today.  But to the extent we can file it
23 earlier, would the same briefing schedule apply, the two weeks
24 to oppose and one week to submit a reply?
25      THE COURT:  Yes, it will.

1              MR. NG:  I just want to make sure that's clear on the
2     record.
3              THE COURT:  Absolutely.  I'll include this in the
4     order as well.  The deadline is the date that I set.  That's
5     the last day on which the motion can be filed.  The deadline
6     for the opposition and reply will be floating deadline based on
7     the date of service of the motion or opposition that triggers
8     the opposition or reply, as is applicable.
9              MR. NG:  Thank you, your Honor.
10             THE COURT:  You're welcome.
11             Good.  So I will look forward to seeing your papers
12    here.
13             Can I ask, Mr. Byun, two questions:  First, assume for
14    these purposes that class action waivers in FLSA cases are not
15    permitted going forward, but arbitration of the FLSA actions is
16    permitted, mandatory FLSA arbitration is permitted, what does
17    that do with this lawsuit which has a single plaintiff?
18             MR. BYUN:  Yes, your Honor.  For this action, it would
19    go to arbitration, your Honor.
20             THE COURT:  Thank you.  Good.  Understood.  So another
21    reason why waiting for the Supreme Court to act is not a mete.
22             MR. NG:  Your Honor, may I just bring up one other
23    issue?
24             THE COURT:  Please.
25             MR. NG:  I know it's not the purpose of today's

```
 1  conference.  But maybe, because plaintiff's counsel is here, I
 2  can hopefully explain to him that there is also in this case a
 3  general release that was signed by the plaintiffs.
 4          I believe from plaintiff's counsel's initial remarks,
 5  he said that wouldn't be applicable to the federal claims.
 6  However, even if that was the case, they would be applicable to
 7  the more stringent New York Labor Law standards.
 8          So I think this is something that will be addressed
 9  should this case proceed through arbitration, but it's another
10  reason why maybe plaintiff's counsel or whatever attorney takes
11  the case may wish to reconsider this matter.
12          THE COURT:  Thank you.  I'm sure they will have the
13  opportunity to do so.
14          Counsel, I'm not going to schedule an initial
15  pretrial conference.  As you know, this case was referred to
16  the mandatory FLSA pilot program because it's on my docket.  I
17  think that we should resolve this motion before going forward.
18          I understand that the other defendants have not
19  appeared, and therefore, to the extent that these defendants
20  are dismissed, it may be that plaintiff would choose to pursue
21  the continuing claims against the defaulting defendants through
22  a motion for default judgment or otherwise.  Good.
23          Is there anything else that we should discuss here?
24  Mr. Byun?
25          MR. BYUN:  Nothing further from plaintiffs,
```

```
 1  your Honor.
 2              THE COURT:  Thank you.
 3              What are you going to do after you leave Troy Law?
 4              MR. BYUN:  I'm going back to my country to visit my
 5  family.  My dad has health issues.  So I need to take care of
 6  his health issues.
 7              THE COURT:  I'm sorry to hear that.  Good luck.
 8              MR. BYUN:  Thank you, your Honor.
 9              THE COURT:  Good.  Anything else from defendants?
10              MR. NG:  Nothing further, your Honor.  Thank you very
11  much.
12              THE COURT:  Good.  This proceeding is adjourned.
13              (Adjourned)
14
15
16
17
18
19
20
21
22
23
24
25
```